UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

T. O'BRIEN                                             CIVIL ACTION

VERSUS                                                NO: 23-793

AUTOZONERS, LLC d/b/a AUTOZONE                        SECTION: "A" (5)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 59)**
filed by Defendant, Autozoners, LLC ("AutoZone"). Plaintiff, Tiffany O'Brien, opposes the
motion. The motion, submitted for consideration on October 30, 2024, is before the Court on the
briefs without oral argument. For the following reasons, the motion is **GRANTED**.

## I.    Background

### a.    Factual Background

This suit arises out of alleged employment discrimination on the part of AutoZone against
the plaintiff, Tiffany O'Brien. AutoZone initially hired Plaintiff in 2016 as a delivery driver for a
"hub" store in Baton Rouge, Louisiana ("Store 4295").[1]  In late 2018 or early 2019, following the
birth of her first child, Plaintiff was promoted from "hub driver" to "hub specialist."[2]  Soon
thereafter, in April 2019, she transferred to a store in Kenner, Louisiana ("Store 3013"), another
hub store.[3]  Six months into her tenure at Store 3013, in October 2019, she began a romantic

---

[1] Rec. Doc. 1-1, ¶ 13.

[2] The parties appear to disagree on the date of Plaintiff's promotion to hub specialist, but this is ultimately immaterial
to the Court's analysis. *See* O'Brien Dep., Rec. Doc. 59-4, at 27:7-14, 40:10-23.

[3] *Id.* at 24:2-7, 47:10-48:25. An AutoZone hub store is an AutoZone retail location ("DIY"), which handles commercial
components of the store, with a hub component, which effectively acts as warehousing for nearby DIY stores and other
hubs. *Id.* at 47:13-48:3.

relationship with her coworker, Clinton de Laureal ("de Laureal").[4] Despite code of conduct provisions requiring any romantic relationship with a coworker be reported to management, neither Plaintiff nor de Laureal informed AutoZone management of the relationship.[5] In June 2020, the couple moved in together and their child was born in December of that year.[6]

In connection with the birth of Plaintiff's child, she took an approved leave of absence from AutoZone starting in November 2020 and extending to late February 2021, but did not return to work when her leave ended.[7] AutoZone made multiple unsuccessful attempts to contact Plaintiff between February and September 2021 regarding her employment;[8] but rather than returning to work there, she sought employment as a laboratory assistant.[9] Facing COVID-19 related staffing shortages, AutoZone contacted her again in December 2021.[10] Thereafter, Plaintiff reapplied, reinterviewed, and was rehired as a hub specialist at Store 3013—the store where Mr. de Laureal (Plaintiff's partner and co-parent) had been working continuously since 2017.[11] During her interview, Plaintiff did not inform AutoZone that she and Mr. de Laureal were in a relationship.[12]

As part of Plaintiff's reemployment with AutoZone in January 2022, she was allegedly

---

[4] *Id.* at 53:16-19.

[5] *Id.* at 66:1-67:18; *see also* Rec. Doc. 59-4, at CM/ECF p. 250 (noting "If you have a conflict of interest, disclose it to your manager immediately," and listing "Family & Personal Relationships" as a conflict of interest category).

[6] O'Brien Dep., Rec. Doc. 59-4, at 92:6-93:25.

[7] *Id.* at 96:12-97:22, 98:8-17 (discussing Plaintiff's decision to not return to work at AutoZone and citing COVID-19 related health concerns as the reason).

[8] *Id.* at 98:18-105:22. AutoZone ultimately terminated her employment in 2021 because she did not return to work. *Id.* at 103:12-15.

[9] *Id.* at 103:12-15.

[10] *Id.* at 106:2-16.

[11] *Id.* at 106:17-110:11.

[12] *Id.* at 108:8-13. The Court notes, however, that no evidence indicates Plaintiff was asked during the interview if she was in a relationship with anyone at the store.

promised a promotion to a hub coordinator position when the employee who was then serving as the hub coordinator retired.[13] Although the employee was expected to retire in April 2022, he did not do so and Plaintiff was, in turn, not promoted.[14]

In May 2022, Mr. Jamell Pierce, a new district manager for Store 3013, was put on notice of Plaintiff's relationship with Mr. de Laureal via a text message from the assistant store manager.[15] After verifying Plaintiff and Mr. de Laureal were in a relationship, Mr. Pierce informed Plaintiff that the relationship violated AutoZone's code of conduct and later advised her that she would be transferred to Store 4289, a "non-Hub" store, while Mr. de Laureal remained at Store 3013.[16]

Plaintiff objected to the transfer, arguing that, while AutoZone's policy prohibits family members or persons who are having a romantic relationship from being in a position where one supervises the other, she and Mr. de Laureal maintained equal levels of responsibility and were not positioned to supervise one another.[17] In a separate conversation with Mr. James Hampton, an AutoZone human resources manager, she complained that she was being targeted as a female because she, and not Mr. de Laureal, was the subject of the transfer and that similar conversations

---

[13] *Id.* at 115:6-116:25.

[14] *Id.* at 116:17-25.

[15] Rec. Doc. 1, ¶ 21 (noting that Mr. Pierce "claimed to have developed his suspicions about the baby's parentage based on an "anonymous text"). The "anonymous text" was sent to Mr. Pierce by the assistant store manager, who asked Mr. Pierce to remain anonymous when reporting the violation. Pierce Dep., Rec. Doc. 59-6, at 21:5-17.

[16] Rec. Doc. 1, ¶ 22. A non-Hub store is a retail and merchandising store, without the warehouse-style operations mentioned *supra* note 3. According to Plaintiff's deposition testimony, Mr. de Laureal did not want to transfer stores either. O'Brien Dep., Rec. Doc 59-4, at 137:17-19.

[17] *Id.* ¶¶ 24, 27; O'Brien Dep., Rec. Doc. 59-4, at 127:21-24. Plaintiff's characterization of the relevant code of conduct provision is inaccurate. The full provision reads:

> Referring family and friends to open positions at AutoZone is a great way to strengthen the AutoZone team—but working with family and friends can cause a conflict if we aren't careful. AutoZoners should never be able to *directly or indirectly supervise* or be supervised by a family member or person with whom you have a romantic relationship.

Rec. Doc. 59-4, at CM/ECF p. 251 (emphasis added).

were not had with Mr. de Laureal.[18] In response, AutoZone personnel informed Plaintiff she was being transferred because Mr. de Laureal had superior job performance and experience at Store 3013, not because of Plaintiff's gender.[19]

AutoZone personnel later testified that, because Mr. de Laureal was the most tenured hub specialist at Store 3013, he assumed the role of hub coordinator when the hub coordinator was absent.[20] Because of this, Mr. de Laureal would, at times, "directly or indirectly" supervise Plaintiff, which is prohibited by AutoZone's code of conduct.[21] In addition, they posited that Plaintiff had inferior performance evaluations and was less experienced.[22] Accordingly, it is AutoZone's position that it was in "the best interest of the business" to keep de Laureal at Store 3013.[23]

In June 2022, Plaintiff was formally transferred to Store 4289, which was located less than two miles from Store 3013.[24] As part of the transfer, she was promised a pay raise[25] and placed in a role that AutoZone, but not Plaintiff, considered to have "primarily the same duties she performed

---

[18] O'Brien Dep., Rec. Doc. 59-4, at 137:1-10.

[19] Pierce Dep., Rec. Doc. 59-6, at 79:16-80:2.

[20] *Id.* at 41:3-15; *see also* Hampton Dep., Rec. Doc. 59-5, at 25:17-26:11,

> It was a business decision . . . . [A]t the time, Clinton was an extraordinary employee, and he was the second in command of that hub, which is a really big part of our business. He had more tenure at the store. He knew more about the operation.

[21] *See* Rec. Doc. 59-4, at CM/ECF p. 251 (code of conduct).

[22] Pierce Dep., Rec. Doc. 59-6, at 69:23-70:8.

[23] Hampton Dep., Rec. Doc. 59-5, at 25:17-26:11.

[24] O'Brien Dep., Rec. Doc. 59-4, at 128:4-8.

[25] Plaintiff disputes receiving a pay raise. *See* Rec. Doc. 74-3, ¶ 29. AutoZone personnel contend that the pay increase was never determined because "[they] never had a chance to actually sit down and have a conversation with her regarding it because [they] were still trying to get past the part of her accepting the transfer." Pierce Dep., Rec. Doc. 59-6, at 75:11-19.

at the hub."[26] She was also given a preferentially set schedule, working 9:00 a.m. to 6:00 p.m., Monday through Friday, which, according to AutoZone personnel, was "a better schedule than any of the other employees at [Store] 4289."[27]

Plaintiff first reported to Store 4289 on June 20 and 21 but was a "no call/no show" for at least one of her remaining shifts that week.[28] She was subsequently a no call/no show for each of her four shifts the following week.[29] On July 5, Plaintiff's manager attempted contacting her to confirm whether she intended to work her pre-scheduled shifts on July 5 through July 8, but received no response for three days.[30] On July 8, Plaintiff responded via text message and gave notice that she did not intend to show up for any more shifts at Store 4289.[31] The next day, July 9, Plaintiff sent an identical text message to her district manager, Jamell Pierce.[32] As of July 9, Plaintiff had missed eleven scheduled shifts without proper notification or documentation to excuse her absences.[33]

After receiving Plaintiff's text messages, AutoZone management and human resources

---

[26] O'Brien Dep., Rec. Doc. 59-4, at 83:13-24 (identifying her new job as "merchandiser" and discussing a two-dollar pay raise), 127:25-128:1-3; Pierce Dep., Rec. Doc. 59-6, at 74:8-75:7 (noting that the "same duties" included "inventory management and planograms"). Plaintiff contends that the merchandiser role was a demotion because (1) she was not given the raise that she was promised, and (2) she no longer had certain computer access that was reserved for management. Rec. Doc. 1, ¶ 18.

[27] Pierce Dep., Rec. Doc. 59-6, at 81:11-82:6.

[28] O'Brien Dep., Rec. Doc. 59-4, at 141:1-13, 143:2-7. Plaintiff claims that her supervisor approved her absence on June 22 due to illness but admits that her absence on June 23 was unexcused. *Id.* at 144:1-15. When an AutoZone employee does misses work and does not give notice, it is referred to as a "no call/no show." *Id.*

[29] *Id.* at 151:13-19. Plaintiff claims she told someone other than her manager that she was not coming in on Monday but admits to being a no call/no show on the remaining days. *Id.* at 145:13-19.

[30] *Id.* at 154:5-18, 155:3-6. Plaintiff claims she did not return her manager's call because she was sick. *Id.* at 154:19-22.

[31] *Id.* at 156:1-13. This was Plaintiff's first communication with AutoZone since she stopped showing up for work two weeks prior.

[32] *Id.* at 160:2-5.

[33] Hampton Dep., Rec. Doc. 59-5, at 74:15-19 (noting that, if an employee missed eleven shifts without proper notification or documentation, their employment at AutoZone would be terminated in most cases).

unsuccessfully attempted to make contact with her on July 8 and July 12.[34] Then, on July 17, Plaintiff sent a text message to the district manager and regional manager asking why she had not yet been transferred back to Store 3013.[35] She did not receive a response to her message and did not return to work.[36] On July 25—after a thirty day absence from work—Plaintiff was on a vacation (which had been approved by AutoZone management months prior) when a letter was delivered to her home indicating that, if she did not report to work by July 28, it would be assumed that she was voluntarily resigning.[37]

Plaintiff returned from her vacation and saw the letter on July 31, but made no effort to contact AutoZone until August 3.[38] According to Plaintiff, James Hampton (the AutoZone human resources manager) told her in their August 3 phone conversation "I don't know why you are calling because you have already been terminated as of yesterday."[39] An email sent to Plaintiff by Mr. Hampton after their call, however, reflects he requested she call him the following day so that he could provide her with "instructions on getting me your notes, showing that you were under doctor's care on the days that you missed work."[40] Plaintiff never responded to Mr. Hampton's email and her employment was formally terminated on August 8.[41] On August 15, Mr. de Laureal was promoted to the same hub coordinator position at Store 3013 that was allegedly promised to Plaintiff

---

[34] *See* Rec. Doc. 59-4, at CM/ECF pp. 285, 288-90.

[35] *Id.* at CM/ECF p. 291.

[36] Rec. Doc. 1, ¶ 33.

[37] O'Brien Dep., Rec. Doc. 59-4, at 166:10-18; Rec. Doc. 59-4, at CM/ECF p. 295.

[38] O'Brien Dep., Rec. Doc. 59-4, at 170:3-25.

[39] *Id.* at 171:7-9.

[40] Rec. Doc. 59-4, at CM/ECF p. 297.

[41] *Id.* at CM/ECF p. 298. According to Plaintiff, her employment was terminated August 13, 2024. *See* Rec. Doc. 74-3, ¶ 42.

when she became reemployed by AutoZone in January 2022.[42]

### b. Procedural Background

Three months after Plaintiff's termination from AutoZone, she filed a Charge of Discrimination with the New Orleans Field Office of the Equal Employment Opportunity Commission ("EEOC").[43] On December 5, 2022, Plaintiff received a Notice of Right to Sue ("Right to Sue") from the EEOC, indicating that no investigation took place.[44] This lawsuit was timely filed less than ninety days after Plaintiff's receipt of the Right to Sue letter, on March 3, 2023.[45]

## II.    Rule 56 Standard

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

---

[42] Rec. Doc. 1, ¶ 36.

[43] *Id.* ¶ 10 (identifying the complaint number as 461-2023-00280).

[44] *Id.* ¶ 11; *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (internal citations omitted),

> Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. Title VII provides that claimants have ninety days to file a civil action after receipt of such a notice from the EEOC.

Evidence of Plaintiff's Right to Sue letter is not before the Court, but this is an uncontested fact. As such, the Court accepts it as true.

[45] Rec. Doc. 1, ¶ 12.

the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## III.    Discussion

AutoZone seeks summary judgment on all Title VII causes of action which occurred before January 5, 2022, and Plaintiff's timely Title VII claims based on gender discrimination, retaliation, and harassment.[46] The Court addresses each argument in turn.

### a.  Statute of limitations

Title 42 U.S.C. § 2000e-5 contains the prerequisites that a plaintiff must satisfy before filing a Title VII lawsuit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). In a state like Louisiana, a charge must be filed with the EEOC within 300 days of the adverse employment practice. *Id.* In other words, the 300-day limitations period begins to run as soon as the plaintiff

---

[46] Plaintiff's complaint broadly alleges that AutoZone "engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*" Rec. Doc. 1, ¶ 44. The complaint does not run afoul of Federal Rule of Civil Procedure 8, but the Court notes that AutoZone seeks complete dismissal of this lawsuit. *See McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 551 (5th Cir. 2003) ("The notice pleading requirements of [Rule 8] and case law do not require an inordinate amount of detail or precision."); Rec. Doc. 59-1, at 30 (praying that the Court disposes all of Plaintiff's claims). Because Plaintiff has not identified any legal theories that are unaddressed by AutoZone's motion in her response, the Court considers all legal issues in this case to be properly before it on summary judgment. *See, e.g.*, Rec. Doc. 65-4, at 3-4 (limiting Plaintiff's argument to discrimination claims for failure to promote, job transfer, demotion, and wrongful termination).

"knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000). A claim is time barred if it is not filed within these time limits.[47] *Morgan*, 536 U.S. at 109.

Here, Plaintiff filed her charge with the EEOC on November 1, 2022.[48] Accordingly, any claim regarding an alleged adverse action that occurred before January 5, 2022 is time-barred.[49] Plaintiff did not oppose this argument in her response to AutoZone's motion.

### b. Discrimination

### *The McDonnell Douglas Framework*

Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff's claims rest on circumstantial evidence, as they do here, district courts apply a three-step, burden-shifting analysis prescribed by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). Under the *McDonnell Douglas* framework, a plaintiff must first raise a genuine issue of material fact on each element of her prima facie case. *Id.* at 997-98. Second, if the plaintiff presents a prima facie case, the defendant must give a legitimate, nondiscriminatory reason for the employment decision. *Id.* at 999. Third, if the defendant provides a legitimate reason, the plaintiff must raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination. *Id.*

---

[47] The limitations period on filing a charge of employment discrimination is subject to equitable doctrines like tolling and estoppel, but Plaintiff does not seek relief under either doctrine. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003).

[48] Rec. Doc. 1, ¶ 10.

[49] As noted in AutoZone's reply brief, Plaintiff does not oppose AutoZone's statute of limitation arguments. *See* Rec. Doc. 78, at 1. The facts that may give rise to a time-barred claim are listed in paragraphs 13 through 20 of the complaint. *See* Rec. Doc. 1.

***Step One – Establishing a prima facie case of discrimination***

To establish a prima facie case of discrimination under the first step of the framework, the plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably" (hereinafter "prima facie requirements"). *Id.* at 997-98. In the instant case, the only uncontested prima facie requirement is the first requirement—Plaintiff's status as a member of a protected class based on her gender.

To establish the second prima facie requirement—that she was qualified for the position she sought—the plaintiff need only show that she possessed the basic skills necessary for the performance of the job. *See Johnson v. Cabot Corp.*, No. 6:17-cv-01656, 2019 WL 693051, at *4 (W.D. La. Feb. 19, 2019) (noting the lack of "any precedential Fifth Circuit jurisprudence addressing this element of [the plaintiff's] prima facie burden" and collecting cases from other circuits).

The analysis under the third prima facie requirement—establishing the employee suffered an adverse employment action—was recently altered by the Fifth Circuit in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023), and subsequently by the Supreme Court in *Muldrow v. City of St. Louis,* 601 U.S. 346 (2024). Prior to *Hamilton*, only "ultimate employment decisions" could constitute an adverse employment action giving rise to liability in the Fifth Circuit. 79 F.4th at 502-03. The ultimate-employment-decision test restricted employer liability to decisions such as "hiring, granting leave, discharging, promoting, or compensating." *Id.* at 501. Now, "to plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment."

*Id.* at 502-03. In arriving at this conclusion, the *Hamilton* court reasoned:

> Title VII's coverage is [not] limited to economic or tangible discrimination. This is because Section 703(a)(1) not only covers terms and conditions in the narrow contractual sense, but evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.

*Id.* at 501 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)) (internal quotations and footnotes omitted). Relying on the same precedent as the Fifth Circuit in *Hamilton*, the *Muldrow* Court held (in the context of an involuntary transfer action)[50] that an employee must show "some" harm with respect to an identifiable term or condition of employment, but that the harm need not be significant, "[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." 601 U.S. at 355-56.

To show an employee is "similarly situated" under the fourth and final prima facie requirement, the plaintiff must conduct a "comparator analysis." *Saketkoo*, 31 F.4th at 998 (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-62 (5th Cir. 2009)).

> Under this analysis, the employee must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. The similarly situated employee is known as a comparator. A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications. Moreover, we require an employee to show that the comparator's conduct is nearly identical, not strictly identical.

*Id.* (internal quotations and citations omitted).[51] An additional consideration, which is critical in

---

[50] Pre-*Hamilton*, a transfer was not an adverse action unless it could be proved that the transfer amounted to a demotion. *See, e.g.*, *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) ("It is well settled that a 'purely lateral transfer' is not an adverse employment action.").

[51] *See also id.* at 998 n.3 (noting that courts in the Fifth Circuit must conduct a comparator analysis).

the instant case, is whether the plaintiff and the proffered comparator have "essentially comparable violation histories." *Lee*, 574 F.3d at 260.

### Step Two – Articulating a legitimate, nondiscriminatory reason for adverse action

If the plaintiff establishes a prima facie case of discrimination, she triggers the second step of the *McDonnell Douglas* framework, in which the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. In other words, "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (cleaned up). Notably, while the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Tex. Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

### Step Three – Showing the defendant's reason for adverse action was pretextual

If the defendant articulates a legitimate nondiscriminatory reason for its action, the burden then shifts back to the plaintiff to prove that each proffered reason is pretextual. *Id.* at 804. This is the third and final step of the framework.

To preclude summary judgment under the third step of the framework, the plaintiff must show "there is a genuine issue of material fact as to whether [the defendant's nondiscriminatory] reason was pretextual." *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (quoting *Laxton*

*v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

A showing that the unsuccessful employee was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected" will be sufficient to prove that the employer's proffered reasons are pretextual. *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) (collecting cases). In other words, a complaining employee's superior qualifications are probative of pretext when "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (quoting *Deines v. Tex. Dep't of Prot. & Regul. Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

### *Plaintiff's discrimination claims*

In the case at hand, Plaintiff alleges she was discriminated against under Title VII when AutoZone: (1) transferred her from Store 3013 to Store 4289; (2) demoted her into a less prestigious, less desirable position; (3) denied her a promised pay increase; (4) failed to promote her; and (5) terminated her employment.[52] The Court considers each individual allegation through the lens of the above-described *McDonnell Douglas* framework. Because neither party contests Plaintiff's membership in a protected class (the first prima facie requirement) the Court limits its analysis in the first step of the framework to the remaining three prima facie requirements.[53]

#### *1. Involuntary transfer*

Plaintiff has established a prima facie case for discrimination under the first step of the *McDonnell Douglas* framework for the following reasons: she was qualified for the job she held at the time of the transfer; she suffered an adverse employment action when she was transferred from

---

[52] Rec. Doc. 65-4, at 4.

[53] *I.e.,* whether Plaintiff was qualified for the position she sought, suffered an adverse employment action, and if others similarly situated but outside her protected class were treated more favorably. *See Saketkoo*, 31 F.4th at 997-98.

Store 3013 to Store 4289;[54] and she was treated less favorably than Mr. de Laureal when she—not her similarly situated male coworker, romantic partner, and father to her child—was transferred to a different store.[55] *Saketkoo*, 31 F.4th at 997-98.

In accordance with the second step of the framework, AutoZone must "articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. AutoZone contends it transferred Plaintiff, and not Mr. de Laureal, out of Store 3013 based on (1) the needs of the business and (2) Mr. de Laureal's superior qualifications,[56] and supports its contention with the following facts: (i) the relationship policy within the code of conduct prohibits an employee from being directly or indirectly supervised by a person with whom they have a romantic relationship; (ii) Mr. de Laureal and Plaintiff worked at the same store and held the same position, but Mr. de Laureal sometimes held supervisory roles due to his seniority among the hub specialists, which included supervising Plaintiff; (iii) it was discovered that Plaintiff and Mr. de

---

[54] AutoZone argues that the involuntary transfer was not an adverse employment action because Plaintiff was not harmed by the transfer. Rec. Doc. 59-1, at 16 (citing *Muldrow*, 601 U.S. at 355). In support of this argument, it directs the Court to *Maesta v. Apple, Inc.*, a pre-*Hamilton* case which stood in-part for the proposition that a transfer can only be an adverse employment action "if the change makes the job 'objectively worse.'" 546 F. App'x 422, 426 (5th Cir. 2013) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004)). As discussed above, courts in the Fifth Circuit are no longer confined to considering only whether a transfer makes the job objectively worse. *See Hamilton*, 79 F.4th at 500 n.24, 501. The new standard is whether the employee has shown "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354-55.

In the instant case, Plaintiff's involuntary transfer amounts to an adverse employment action because it "brought about some 'disadvantageous' change" in the terms, conditions, or privileges of her employment. *Id.* at 354; *see also Hamilton*, 79 F.4th at 501. Namely, Plaintiff established that, as a result of the transfer, she no longer worked at a store with a "hub coordinator" (the position she was promised she would be promoted to when she became reemployed in January 2022) and she was no longer a "hub specialist," but instead a "merchandiser." Rec. Doc. 65-4, at 9.

[55] AutoZone contends Plaintiff has not established that a similarly situated comparator was treated better. Rec. Doc. 59-1, at 17. The Court disagrees. To carry her burden, Plaintiff "must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances." *Saketkoo*, 31 F.4th at 998. It is undisputed that Mr. de Laureal had similar, although not identical, "job responsibility, experience, and qualifications." *Id.* More importantly, both parties engaged in identical misconduct when they did not report their relationship to AutoZone management. *Id.* As such, Mr. de Laureal is a valid comparator. The Court declines to analyze whether other proposed comparators are valid because they are based on conclusory, unsupported, and contested allegations. *See* Rec. Doc. 65-4, at 10.

[56] *See* Rec. Doc. 78, at 2 n.3.

Laureal were in a relationship that violated the code of conduct; (iv) Mr. de Laureal had longer tenure at Store 3013 and at AutoZone in general; and (v) Mr. de Laureal had stronger performance reviews.[57]

These reasons each support a finding that unlawful discrimination was not the cause of the employment action; rather, it was in the best interest of the business to keep Mr. de Laureal at Store 3013 because of his superior qualifications. *Hicks*, 509 U.S. at 507. As such, the burden shifts back to Plaintiff to show "there is a genuine issue of material fact as to whether [the defendant's nondiscriminatory] reason was pretextual." *Jackson*, 602 F.3d at 378-79.

To establish pretext, Plaintiff must prove by the preponderance of the evidence that the legitimate reasons offered by AutoZone are not its true reasons. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).[58] To do so, she argues that "the jury could find that the Defendant falsely claimed that Ms. O'Brien was being given a lateral transfer, when she was actually being demoted to get her out of the way."[59] Her argument hinges on the following assertions: (i) "Autozone's human resources officials could have met with the couple and collaboratively discussed which person would need to transfer to another department or another store and to which department or store that person would transfer"; and (ii) "Instead, [AutoZone] unilaterally directed Ms. O'Brien to transfer from Store 3013 and promoted Mr. de Laureal to Hub Coordinator at that store."[60] As such, Plaintiff posits that a jury may find "it is *implausible* that Ms. O'Brien's sex was not a factor in the decision to transfer her before promoting her male

---

[57] *See* Rec. Doc. 59-1, at 12-13.

[58] *See also Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 622 (1993) ("The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden to persuade the judge of the fact's existence.") (cleaned up).

[59] Rec. Doc. 65-4, at 7.

[60] *Id.*

counterpart."[61]

Plaintiff has not established that AutoZone's actions were pretextual because she failed to respond to either of its proffered reasons for transferring her to Store 4289. These omissions are fatal to her involuntary transfer claim, but the Court notes that Plaintiff's argument is separately unpersuasive for the following reasons. First, Plaintiff cites no authority, nor is the Court aware of any authority, that requires AutoZone to meet with the plaintiff and Mr. de Laureal and "collaboratively discuss[]" the needs of the business as it related to the interests of the individual employees violating a code of conduct provision.[62] Second, Plaintiff's assertion that AutoZone "unilaterally directed Ms. O'Brien to transfer from Store 3013 and promoted Mr. de Laureal to Hub Coordinator at that store" misleadingly implies that the proximity in time between the two events was short when, in fact, the two events occurred nearly two months apart.[63] Moreover, during those two months, Plaintiff (i) missed eleven scheduled shifts before (ii) informing AutoZone management that she would not return to work at Store 4289.[64] Third, Plaintiff may not—as she attempts to do here—rely on "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, [or] legalistic argumentation" as a substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co.*, 276 F.3d at 759. Accordingly, the Court finds that she has not established that a genuine issue of material fact exists as to whether AutoZone acted with pretext.

Having considered each step of the *McDonnell Douglas* framework, the Court finds that (1) Plaintiff established a prima facie case of discrimination based on the involuntary transfer, (2)

---

[61] *Id.* (quoting *Stennett, v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 317 (5th Cir. 2015) (per curiam)).

[62] *Id.*

[63] *Id.*

[64] *Id.*; *see also* Rec. Doc. 65-3, ¶ 27; Rec. Doc. 59-3, ¶ 81.

AutoZone articulated a legitimate, nondiscriminatory reason for the adverse action, and (3) Plaintiff failed to show AutoZone's decision to transfer her out of Store 3013 was pretextual.

### 2. Demotion

As a threshold matter, the parties disagree as to whether Plaintiff was "demoted"—an adverse employment action which traditionally qualified as an ultimate employment decision under the now abrogated ultimate-employment-decision test. *See Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 218 n.4 (5th Cir. 2023) (applying the pre-*Hamilton* standard and noting "We are bound by our circuit's precedent requiring an 'adverse employment action' that includes *only* 'ultimate employment decisions.'"). Plaintiff argues that the involuntary transfer constituted a demotion because it left her "objectively worse off in terms of her title, duties, benefits, responsibility, and room for advancement."[65] AutoZone contends that Plaintiff was not demoted; instead, she was "simply transferred to another location, where she remained a manager, had similar duties that focused on inventory management and merchandising, was given the same or better schedule, and had an equidistant commute to her home."[66]

But courts in the Fifth Circuit are no longer required to delineate between traditional ultimate employment decisions and other adverse employment actions. *Hamilton*, 79 F.4th at 502-03. Instead, the court must simply determine if the plaintiff has plausibly shown some harm as it relates to compensation or the terms, conditions, or privileges of her employment. *Id.* If so, then she has established that she suffered an adverse employment action, sufficing the third prima facie requirement under the first step of the *McDonnell Douglas* framework. *Saketkoo*, 31 F.4th at 997-98.

---

[65] Rec. Doc. 65-4, at 8-9.

[66] Rec. Doc. 78, at 4.

So in circumstances like this, whether a plaintiff characterizes an alleged adverse employment action as a "transfer" or a "demotion" is ultimately immaterial to the court's analysis under *Hamilton* and *Muldrow* because there is no longer a line in the sand between what were traditionally bright-line "ultimate employment decisions" (like a demotion) and other adverse employment actions that may have qualified as an ultimate employment decision under certain circumstances (like a lateral transfer). *Hamilton*, 79 F.4th at 502-03; *Wallace*, 57 F.4th at 218; *see also Thompson v. City of Waco,* 764 F.3d 500, 503-04 (5th Cir. 2014) (collecting cases applying the pre-*Hamilton* standard and noting "Additionally, our court has held that a transfer or reassignment can be the equivalent of a demotion, and thus constitute an adverse employment action")).

Here, Plaintiff makes a prima facie showing of discrimination,[67] but her demotion claim is based on the same facts as her involuntary transfer claim—namely, that "[Plaintiff's] transfer to Store 4289 was the equivalent to a demotion because the job at Store 4289 was not as good."[68] AutoZone's reasons for transferring Plaintiff, and not Mr. de Laureal, to Store 4289 are likewise the same—it was in the best interest of the business and Mr. de Laureal had superior qualifications.[69] And just as Plaintiff failed to establish by the preponderance of the evidence that AutoZone's decision to transfer her out of Store 3013 was pretextual, she has also failed to show that the alleged demotion was pretextual. As such, her discrimination claim based an alleged demotion falls short.

---

[67] AutoZone contests Plaintiff's prima facie showing, arguing that Plaintiff "can show no objective harm that resulted from her transfer." Rec. Doc. 78, at 4. For reasons already discussed, this argument is unpersuasive. Plaintiff must only show that she suffered "some" harm, and she has done so—the alleged adverse action (regardless of whether it a "transfer" or "demotion") indisputably affected the "terms or conditions" of Plaintiff's employment at AutoZone. *Hamilton*, 79 F.4th at 502-03.

[68] *See, e.g.*, Rec. Doc. 65-4, at 8-10.

[69] Rec. Doc. 78, at 2 n.3.

### 3. *Denial of promised pay increase*

Plaintiff next argues she was promised a pay increase with her transfer, but that it never came to fruition.[70] To support her claim, she relies solely on her own declaration, which states "On my second day working at Store 4289, I learned that I had not received a pay raise."[71] AutoZone does not contest that Plaintiff was promised a pay raise, but instead contends that she "only reported to work at her new store for two days and subsequently abandoned her job before the raise was reflected in Store 4289's computer system."[72] Neither party disputes the first two prima facie requirements under the first step of the *McDonnell Douglas* framework. Accordingly, the Court only considers the third and fourth requirements—whether the alleged denial of a pay raise was an adverse employment action, and whether others similarly situated but outside the protected class were treated more favorably. *Saketkoo*, 31 F.4th at 997-98.

Plaintiff relies on the Fifth Circuit's decision in *Fierros v. Texas Department of Health* to support her claim that the denial of a pay increase constitutes an adverse employment action. 274 F.3d 187 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). But the issue in *Fierros* was retaliation, not gender discrimination. *Id.* at 190 (noting (i) that the EEOC concluded the plaintiff's gender and national origin discrimination claims were unsupported by the evidence and (ii) the district court only considered the retaliation claims)). And, while retaliation and gender discrimination are both actionable claims under Title VII, the text of Title VII's antiretaliation provision is markedly broader than its antidiscrimination counterpart. *Compare* 42 U.S.C. § 2000e-2(a) (antidiscrimination provision), *with* 42 U.S.C. § 2000e-3(a) (antiretaliation provision); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-62

---

[70] Rec. Doc. 65-4, at 7-8.

[71] Rec. Doc. 65-5, ¶ 22.

[72] Rec. Doc. 78, at 7.

(2006) (comparing the two provisions and noting that the scope of the antidiscrimination provision is explicitly limited "to actions that affect employment or alter the conditions of the work place" and that "[n]o such limiting words appear in the antiretaliation provision").[73] As such, the Court declines to consider Plaintiff's claim through the lens of *Fierros*, and will instead consider the adverse action as prescribed by the *Hamilton* court.

Under *Hamilton*, Plaintiff's claim that she was denied a promised pay increase may have survived a motion to dismiss, but not summary judgment. On one hand, it is undisputed that AutoZone approved the Plaintiff's pay raise in connection with her transfer,[74] clearly establishing that the alleged adverse employment action concerned a "term, condition, or privilege[] of employment." *Hamilton*, 79 F.4th at 502. But the Court is unconvinced that Plaintiff has established a genuine factual issue for trial. *Celotex Corp.*, 477 U.S. at 325.[75] This is because there is nothing in the record—other than the vague, conclusional, and unsubstantiated assertions contained in her declaration—to suggest that she was denied a pay increase. *Id.*; Rec. Doc. 65-5, ¶¶ 22, 29. While Plaintiff may rely on self-serving affidavits and declarations to overcome summary judgment, she may not do so if "their contents [are] either conclusory, vague, or not based on personal knowledge." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021); *see also id.* at 161 n.5 (collecting cases in support of this proposition).

---

[73] *See also Porter v. Houma Terrebonne Hous. Auth. Bd. Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015) (internal quotations, alterations, and footnotes omitted),

> The key question is whether the challenged action is materially adverse in that it is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of [retaliatory] discrimination. The standard is objective, but the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.

[74] Rec. Doc. 59-3, ¶¶ 59, 63.

[75] In its motion for summary judgment, AutoZone made a proper showing "that there is an absence of evidence to support the non-moving party's cause." *Celotex Corp.*, 477 U.S. at 325; *see* Rec. Doc. 59-1, at 17 n.17.

Plaintiff's failure to set forth material facts in support of the alleged adverse employment action is fatal to her prima facie showing. As such, her denial of a pay increase claim cannot proceed past the first step of the *McDonnell Douglas* framework.

### 4. Failure-to-promote

Plaintiff's failure-to-promote claim is premised on the following contentions: she sought and was qualified for a position at Store 3013 that AutoZone was attempting to fill; despite her qualifications, she was rejected from the role when AutoZone transferred her to Store 4289 in June 2022; and, after her rejection, AutoZone filled the position with a person outside her protected class when it promoted Mr. de Laureal.[76] At the first step of the *McDonnell Douglas* framework, AutoZone only challenges whether Plaintiff was qualified for the position she sought, arguing that she could not have been qualified for the promotion because she was no longer employed when Mr. de Laureal was promoted to the Hub Coordinator position.[77] But Plaintiff's failure-to-promote allegations are tied to her transfer to Store 4289, not her termination;[78] and there is no dispute that Plaintiff was qualified for the position she sought at the time of her transfer.[79] *Saketkoo*, 31 F.4th at 997-98. Accordingly, the Court is persuaded that Plaintiff has established a prima facie discrimination case based on failure-to-promote.

AutoZone has likewise met its burden to articulate a legitimate, nondiscriminatory reason for promoting Mr. de Laureal, and not Plaintiff. That is, "Mr. [de Laureal] had more tenure within

---

[76] Rec. Doc. 65-4, at 4.

[77] Rec. Doc. 59-1, at 23-24.

[78] *See* Rec. Doc. 65-4, at 5 ("Instead of promoting both O'Brien and Clinton de Laureal . . . Defendant rejected Ms. O'Brien by transferring her out of Store 3013 on June 20, 2022.").

[79] *See* Rec. Doc. 65-4, at 3-4 (noting Plaintiff was qualified for the position of Hub Coordinator because (1) the position was promised to her when she was rehired in January 2022, and (2) she previously received satisfactory performance appraisals); *see also Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003) (noting "the employee must show that the company had a duty or reason to consider her for the position").

the Hub and was the better employee according to performance reviews."[80] To support its claim, AutoZone points to the following facts: (i) at the time of the promotion, Mr. de Laureal had served in the hub specialist position without interruption since 2017 while Plaintiff "had only served in the Hub Specialist position since 2018, and had taken a leave of absence and voluntarily resigned from AutoZone for a period of time in the interim"; and (ii) Mr. de Laureal's performance reviews reflect that he received an "exceeded expectations" score, while Plaintiff was characterized as a "'lackluster' employee with inferior reviews."[81]

In accordance with the third step of the *McDonnell Douglas* framework, Plaintiff must establish by the preponderance of the evidence that AutoZone's proffered reasons are pretextual. *Reeves*, 530 U.S. at 143. However, just as she failed to substantively address AutoZone's proffered reasons in her involuntary transfer and demotion claims, she has similarly failed to address AutoZone's proffered reasons here. In other words, she has introduced no evidence establishing that she was "clearly better qualified" than Mr. de Laureal. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013). Instead, she yet again improperly relies on "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, [or] legalistic argumentation" to show a genuine issue for trial.[82] *TIG Ins. Co.*, 276 F.3d at 759.

Accordingly, the Court finds that she has not established that a genuine issue of material fact exists as to whether AutoZone acted with pretext when it opted not to promote Plaintiff.

---

[80] Rec. Doc. 59-1, at 13; Rec. Doc. 78, at 6.

[81] Rec. Doc. 59-1, at 24.

[82] *See, e.g.*, Rec. Doc. 65-4, at 6-8 (alleging that "If the Defendant believed that Clinton de Laureal was more qualified than Ms. O'Brien, then Defendant could have simply promoted him on that basis"; suggesting that AutoZone should have instead "collaboratively discussed which person would need to transfer to another department"; speculating that the "true reason for Ms. O'Brien's transfer is a genuine issue [of disputed] material fact").

### 5. *Wrongful termination*

Plaintiff claims she has made a prima facie showing of an adverse employment action based on her wrongful termination because (1) she's a member of a protected class; (2) she was qualified for the position she lost; (3) she was discharged while on a pre-approved vacation; and (4) Mr. de Laureal, who was on vacation with her, was not likewise discharged.[83] AutoZone disputes Plaintiff's prima facie showing, arguing that Mr. de Laureal is not similarly situated for the purpose of establishing the fourth prima facie requirement.[84] More specifically, AutoZone contends that Mr. de Laureal is not a valid comparator because he "had not missed ten-plus shifts in violation of AutoZone's Attendance Policy, had not refused to take AutoZone's phone calls, and had not failed to report to work, like Plaintiff, for over a month."[85]

At the outset, the Court notes that there is no evidence to support Plaintiff's argument that she was discharged while on a pre-approved vacation. In fact, her Statement of Material Facts indicates a discharge date of nearly two weeks after she returned from vacation.[86] But putting that discrepancy aside, Plaintiff and Mr. de Laureal are not valid comparators in the context of her wrongful termination claim. It is her burden to establish she was treated "less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances," and she cannot meet this burden because (i) nothing in the record suggests that Mr. de Laureal's workplace violation history gave rise to a similar risk of employment termination and (ii) AutoZone's legitimate reasons for Plaintiff's discharge are unrelated to her vacation with Mr. de Laureal. *Saketkoo*, 31 F.4th at 998; *see also Lee*, 574 F.3d at 260 ("And, critically, the plaintiff's

---

[83] Rec. Doc. 65-4, at 14.

[84] Rec. Doc. 59-1, at 22-23; Rec. Doc. 78, at 13.

[85] Rec. Doc. 78, at 13.

[86] Rec. Doc. 65-3, ¶ 54.

conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions.").

It is well settled in the Fifth Circuit that, under the fourth prima facie requirement, the parties must have "essentially comparable violation histories." *Lee*, 574 F.3d at 260 (citing *Okoye v. Univ. of Tex. Hous. Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001)).[87] Here, Plaintiff and Mr. de Laureal both violated AutoZone's code of conduct provision regarding romantic relationships, which prompted AutoZone's decision to transfer Plaintiff to Store 4289; but de Laureal's misconduct stops there. Plaintiff, on the other hand, quit attending her scheduled shifts at Store 4289 within two days of her transfer[88] and, by the time she and Mr. de Laureal left for their pre-approved vacation, she (i) had been absent from work for over thirty days, during which time she (ii) missed eleven scheduled shifts,[89] and (iii) sent text messages to her intermediate and upper level management expressly stating that she would not be returning to work at Store 4289.[90]

Moreover, there is nothing in the record to suggest Mr. de Laureal had a comparable record of attendance policy violations. *See id.* at 259-60 (explaining that "employees . . . who are subjected to adverse employment action for dissimilar violations are not similarly situated"); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) ("[The comparator's] conduct in no way involved a breach of the non-fraternization policy. He was, therefore, not similarly situated to

---

[87] *See also McKinney v. JB Hunt Transp. Inc.*, 193 Fed. App'x 373, 374 (5th Cir. 2006) (per curiam) (plaintiff had numerous complaints against her and instances of unprofessional conduct unlike her proffered comparator); *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (finding same and noting "The relevant perspective is that of the employer at the time of the adverse employment decision." (quoting *Lee*, 574 F.3d at 260 n.26)); *Daywalker v. UTMB Galveston*, No. 22-40813, 2024 WL 94297, at *7 (5th Cir. Jan. 19, 2024) ("We have clarified that an appropriate comparator is an employee treated more favorably under the same circumstances or with essentially comparable violation histories.") (internal quotations omitted)).

[88] O'Brien Dep., Rec. Doc. 59-4, at 141:10-143:7.

[89] AutoZone's Store Handbook states that the failure to call in or report to work for just two consecutive days constitutes job abandonment, which results in automatic termination. O'Brien Dep., Rec. Doc. 59-4, at CM/ECF p. 180.

[90] *Id.* at 164:13-18; *id.* at CM/ECF p. 290.

Smith and no basis existed for an inference that Wal–Mart's treatment of Smith and Cudd was disparate such as that condemned under Title VII.").

Accordingly, Plaintiff has failed to establish a prima facie case of discrimination based on her alleged wrongful termination because Mr. de Laureal is not a valid comparator in this context.

### c. Retaliation

Having concluded that each of Plaintiff's discrimination claims are inadequate, the Court now turns to her retaliation claim. Plaintiff contends that she complained of the allegedly discriminatory transfer to AutoZone management via text message but, rather than address her complaint of sex discrimination, Defendant terminated her employment in retaliation.[91]

Title VII retaliation claims, like discrimination claims, are analyzed under the familiar *McDonnell Douglas* burden shifting framework. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). To state a prima facie retaliation claim, a plaintiff must allege that (1) the employee participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* If the employee establishes a prima facie case of retaliation, the employer must come forward with a legitimate, nondiscriminatory reason for its action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). If the employer meets its burden, the employee must then demonstrate that the proffered reason is a pretext for retaliation. *Id.* Ultimately, however, "the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.* (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)).

---

[91] Rec. Doc. 65-4, at 12.

Plaintiff has made a prima facie showing of retaliation.[92] Under the first prima facie requirement, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e–3(a)];"[93] and as Plaintiff correctly notes, her opposition to the alleged discriminatory conduct (*i.e.*, complaining to management via text message that the involuntary transfer was discriminatory) is a protected activity.[94] *See Byers v. Dall. Morning News*, 209 F.3d 419, 428 (5th Cir. 2000) (noting that, to satisfy the opposition requirement, Plaintiff need only show that she had a "reasonabl[e] belief that the employer was engaged in unlawful employment practices"). Plaintiff's claim also suffices the second prima facie requirement—showing that AutoZone took an adverse employment action against her—because she alleges she was discharged as a result of her opposition to the transfer. *See Burlington*, 548 U.S. at 68 ("In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotations omitted)). Finally, her claim suffices the third prima facie requirement—establishing a causal connection exists between the protected activity and the adverse employment action—because AutoZone's decision to terminate her was "based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001).[95]

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to

---

[92] The Court notes that Plaintiff's retaliation claim is vague and lacks legal support. *See* Rec. Doc. 65-4, at 11-13. Namely, her brief does not identify the standard for a Title VII retaliation claim, nor cite any cases to support her claim. *Id.* Nonetheless, the Court has drawn all justifiable inferences in her favor. *TIG Ins. Co.*, 276 F.3d at 759.

[93] 42 U.S.C. § 2000e–3(a).

[94] Rec. Doc. 65-4, at 11.

[95] *See also Saketkoo*, 31 F.4th at 1001 (noting that the employer had knowledge of the protected activity when the alleged adverse employment action was taken and that "such knowledge was 'not wholly unrelated' to the alleged [adverse employment action]").

AutoZone to provide a legitimate, nondiscriminatory reason for the alleged adverse employment action. AutoZone meets its burden, contending that "[Plaintiff's] termination was not motivated by anything other than her egregious violations of AutoZone's attendance policy."[96] In response, Plaintiff posits that her termination was pretextual, as evidenced by the facts that (i) AutoZone management directed AutoZone personnel to "send Ms. O'Brien a letter that could serve as a catalyst to discharge her," and (ii) AutoZone's letter requiring her to report to work by July 28, 2022 was delivered while she was on a pre-planned vacation.[97] Plaintiff further contends that AutoZone "was aware of but ignored the most likely method to communicate with Ms. O'Brien and instead chose the method least likely to effectuate communication."[98]

The Court is unpersuaded by Plaintiff's arguments for the following reasons. First, the alleged pretextual timing of the July 22 letter does not create a genuine dispute of material fact as to the reason AutoZone contends it sent Plaintiff the letter and ultimately terminated her employment. In the thirty days between Plaintiff's last shift at AutoZone and her receipt of the letter, she: (i) was a no call/no show at work for eleven shifts—over five times the number of consecutive absences that triggers AutoZone's job abandonment policy;[99] (ii) sent text messages to her first and second line supervisors expressly stating "I will not be coming back to work at your store";[100] and (iii) subsequently failed to return four separate calls from AutoZone management regarding her text messages.[101] Plaintiff provides no specific facts showing there is a genuine issue

---

[96] Rec. Doc. 59-1, at 27.

[97] Rec. Doc. 65-4, at 14-15.

[98] *Id.* at 16.

[99] Hampton Dep., Rec. Doc. 59-5, at 74:15-19 (no call/no show); O'Brien Dep., Rec. Doc. 59-4, at CM/ECF p. 180 (job abandonment policy).

[100] O'Brien Dep., Rec. Doc. 59-4, at 156:1-13, 160:2-5 (referring to Store 4289).

[101] Def.'s Statement of Material Facts, Rec. Doc. 59-3, ¶¶ 80-83 (noting that Plaintiff did not respond to two calls on July 8, one call on July 12, and one call on July 17).

for trial as to her attendance violations. *Celotex Corp.*, 477 U.S. at 324. As for her failure to return AutoZone's phone calls, she argues that a genuine dispute of material fact exists because AutoZone personnel would not return her text messages.[102] But the record makes clear that text messaging is not an acceptable method of communication or notification as it relates to an AutoZone employee's attendance absences.[103]

Second, Plaintiff's allegation that AutoZone management conspired to send the letter while she was on vacation is wholly unsupported by the record.[104] Third, despite the timing of AutoZone's letter and its noting that she would be considered to have voluntarily resigned if she did not return to work by July 28, Plaintiff contacted AutoZone management on August 3 and was given yet another chance to show she was under doctor's care on the days she missed work.[105]

For the same reasons, it is also clear that Plaintiff's attendance violations after her complaint were the "but for" cause of her termination from AutoZone, not the complaint itself. *Lyons*, 964 F.3d at 304. Accordingly, her retaliation claim fails.[106]

### d. Harassment

AutoZone moves for summary judgment on Plaintiff's harassment allegations on the grounds that the harassment Plaintiff complained of at Store 4289 is insufficient to state a hostile work environment claim.[107] A hostile work environment exists "when the workplace is permeated

---

[102] Rec. Doc. 65-4, at 14 (noting AutoZone "ignored the one form of communication that it knew it would use to reach Ms. O'Brien").

[103] *See* O'Brien Dep., Rec. Doc. 59-4, at CM/ECF p. 294 (internal email from James Hampton noting that "[Plaintiff] has only been attempting to communicate via text, which is not an acceptable way to communicate [an] absence or an injury"). The AutoZone Store Handbook expressly notes that, as it relates to attendance, "Voicemail, text messages and emails are not acceptable methods of notification." *Id.* at CM/ECF p. 179.

[104] Rec. Doc. 65-4, at 15.

[105] Rec. Doc. 59-4, at CM/ECF p. 297.

[106] It is reply brief, AutoZone argues for the first time that Plaintiff cannot set forth a valid claim for retaliation as it relates to the alleged denied pay raise. Rec. Doc. 78, at 9. The Court declines to consider the merits of this argument.

[107] Rec. Doc. 59-1, at 28.

with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan*, 536 U.S. at 116. To establish a prima facie hostile work environment claim, a plaintiff must show "(1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).

Plaintiff does not oppose AutoZone's argument, but summary judgment cannot be granted simply because there is no opposition. *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hibernia Nat'l Bank*, 776 F.2d at 1279.

Here, the Court finds that AutoZone has carried its burden. AutoZone correctly notes that Plaintiff only complains of a single, isolated incident.[108] "The Supreme Court has repeatedly stated that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Hockman v. Westward Comm'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted)). Because AutoZone identified an

---

[108] *Id.* at 29. The Court notes that Plaintiff's complaint alleges a separate instance of harassment committed by the same employee in June 2020. Rec. Doc. 1, ¶ 16. This claim arose prior to January 5, 2022, so it is time barred. But even if it were properly before the Court, the two instances viewed together are still not sufficiently severe or pervasive to constitute an abusive or hostile work environment. *See, e.g.*, *Fortenberry v. Texas*, 75 F. App'x 924, 928 (5th Cir. 2003) (affirming summary judgment in a case where two isolated incidents of alleged harassment occurred almost two years apart because the long period of time was not sufficiently severe or pervasive to constitute an abusive or hostile work environment).

absence of evidence in the record to support the severe and pervasive nature of the alleged conduct, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact. Plaintiff has not carried this burden. *See Celotex Corp.*, 477 U.S. at 322. Accordingly, the Court grants summary judgment to Defendant on this issue.

## IV.    Conclusion

AutoZone's motion seeks dismissal of all Plaintiff's claims, which include a statute of limitations argument and an argument on the merits of Plaintiff's Title VII causes of action based on gender discrimination, retaliation, and harassment. For the foregoing reasons, any claim regarding an alleged adverse action that occurred before January 5, 2022 is dismissed as time-barred. Additionally, AutoZone has shown that it is entitled to summary judgment dismissal of all remaining Title VII claims, which include Plaintiff's claims for (i) gender discrimination based on her alleged involuntary transfer, demotion, denial of promised pay increase, failure-to-promote, and wrongful termination; (ii) retaliation; and (iii) harassment.

Accordingly;

Defendant's Motion for Summary Judgment (Rec. Doc. 59) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

November 19, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE